UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ADWARD G. AURAHIM, | ) | |
|---|---|---|
| Plaintiff, | ) | No. 17 C 1133 |
| v. | ) | Magistrate Judge M. David Weisman |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Adward G. Aurahim brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration Commissioner's decision denying his application for benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

**Background**

Plaintiff filed an application for disability benefits on September 27, 2013, alleging a disability onset date of February 5, 2009. (R. 63-65.) Plaintiff's application was denied initially on January 1, 2014, and on reconsideration on July 18, 2014. (R. 63, 75.) An Administrative Law Judge ("ALJ") held a hearing on plaintiff's application on September 18, 2015. (*See* R. 14-53.) On October 13, 2015, the ALJ denied plaintiff's application. (*See* R. 81-103.) The Appeals Council denied plaintiff's request for review (R. 1-3), leaving the ALJ's decision as the final

---

[1]On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (last visited July 27, 2017). Accordingly, the Court substitutes Berryhill for Colvin pursuant to Federal Rule of Civil Procedure 25(d).

decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citation omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the

Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 84.) At step two, the ALJ determined that plaintiff has the severe impairments of "mild L5-S1 lumbar degenerative disc disease . . . [and] C5-C6 mild foraminal stenosis."[2] (R. 85.) At step three the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*) At step four, the ALJ found that plaintiff retains the residual functional capacity ("RFC") to perform light work with additional limitations. (R. 85-86.) At step five, the ALJ determined that plaintiff is unable to perform any past relevant work, but that there are jobs in the national economy that he can perform. (R. 100-01.) Accordingly, the ALJ concluded that plaintiff is not disabled. (R. 102.)

Plaintiff argues that the ALJ improperly assessed the medical evidence by giving more weight to the opinion of the medical expert, Dr. Semerdjian, than that of plaintiff's treating physician, Dr. Bermudez. An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). In March 2014, after treating plaintiff for one year, Dr. Bermudez opined that plaintiff had degenerative disc disease in the cervical and lumbar spine as documented by MRIs, which showed "mild to moderate degenerative disc change." (R. 328.) As a result, Dr. Bermudez said, plaintiff could only stand/walk or sit for 1-2 hours, could

---

[2]"Spinal stenosis is a narrowing of the spaces within [the] spine, which can put pressure on the nerves that travel through the spine." http://www.mayoclinic.org/diseases-conditions/spinal-stenosis/basics/definition/con-20036105 (last visited July 27, 2016).

occasionally lift twenty-five pounds, frequently lift ten pounds, and occasionally bend. (R. 329-30.)

The ALJ gave "no weight" to Dr. Bermudez's opinion because it: (1) was "not consistent with the imaging results"; (2) was "inconsistent" with the doctor's own treatment records; (3) lacked a "function-by-function analysis" of plaintiff's abilities; (4) was inconsistent with plaintiff's report that he could lift up to twenty-five pounds; and (5) lacked environmental limitations, which the ALJ said would be "reasonable" given plaintiff's "reports of constant and severe pain and numbness. (R. 98-99.) In other words, the ALJ found that Dr. Bermudez's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and was "inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2).

The record supports some of these conclusions. For example, the MRIs showed only mild degenerative changes in plaintiff's back and neck, and Dr. Bermudez's notes consistently state that the range of motion in plaintiff's back and neck was either "[n]ormal" or only "mildly reduced." (*See* R. 343, 347, 354, 357, 364, 375-80, 401, 404, 407-08.) However, the opinion does contain a function-by function analysis and is consistent with plaintiff's report of his daily activities. (*See* R. 243-48, 328-31.) Moreover, the ALJ was "playing doctor" when he asserted that, given plaintiff's complaints, Dr. Bermudez should have included environmental limitations in his opinion. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record.").

Assuming the tension between the clinical findings and Dr. Bermudez's opinion justified the ALJ's refusal to give the opinion controlling weight, the ALJ was still required to determine

4

how much weight to give it by considering the regulatory factors. *See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) ("If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion."); *see also* 20 C.F.R. § 404.1527(c). The ALJ considered only two of these factors, Dr. Bermudez's specialty and the consistency and supportability of his opinion, before rejecting it. (*See* R. 92, 99.) That was error. *See Moss*, 555 F.3d at 561; *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (stating that [a]n ALJ *must* consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion" in assessing a physician's opinion) (emphasis added). Had the ALJ considered the other factors -- that Dr. Bermudez saw plaintiff frequently for more than a year and prescribed physical therapy and pain relievers for him, that plaintiff consistently complained of back and neck pain to Dr. Bermudez and his physical therapist, and that Dr. Bermudez told plaintiff to consult a neurosurgeon (*see* R. 338-51, 356-61, 383, 386-87, 405-08, 414-18, 424-57) -- he may not have rejected the opinion wholesale in favor of that of a non-examining source.

Plaintiff also contends that the RFC determination is flawed because it does not account for plaintiff's limited flexion[3] or his daytime somnolence.[4] As the ALJ acknowledged in the summary of medical evidence (*see* R. 87-89), two consultative examiners ("CEs") determined that plaintiff's lumbar flexion, which is ninety degrees when normal, was limited to sixty degrees

---

[3]"Flexion" is "the act of bending or the condition of being bent." *Flexion*, Dorland's Illustrated Medical Dictionary (32ed. 2012).
[4]"Somnolence" is "drowsiness or sleepiness, particularly in excess." *Somnolence*, Dorland's Illustrated Medical Dictionary (32ed. 2012).

and thirty degrees, respectively. (*See* R. 285, 293.) But the ALJ did not address that evidence, let alone explain why he rejected it, when he included occasional stooping in plaintiff's RFC. (*See* R. 85-86.) The ALJ did address plaintiff's complaints of somnolence, but rejected them because plaintiff had not reported somnolence as a medication side effect. (R. 98.) That is true but beside the point. The record shows that plaintiff complained to Dr. Bermudez about daytime sleepiness and plaintiff testified that he takes naps "every day almost" because his back pain keeps him awake at night. (R. 39-40, 400, 409.) The fact that he attributed his sleepiness to pain, rather than medication, does not vitiate his somnolence complaints. The ALJ's failure to address, or appropriately reject, the evidence of plaintiff's flexion and somnolence issues in formulating the RFC was error. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("We have repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it.").

Plaintiff also takes issue with the ALJ's credibility determination/symptom evaluation.[5] Because that issue is informed by the medical evidence and RFC, it too will have to be revisited on remand.

---

[5] A few months after the ALJ issued his opinion, the Commissioner issued new guidance for evaluating symptoms in disability claims, which supersedes SSR 96-7p and "eliminat[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

## Conclusion

For the reasons set forth above, the Court reverses the Commissioner's decision and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**                                **ENTERED:  August 18, 2017**

_____
**M. David Weisman**
**United States Magistrate Judge**